**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**402 EAST STATE STREET**
**TRENTON, NJ 08608**

CHAMBERS OF
GARRETT E. BROWN, JR.
JUDGE

**LETTER OPINION**

July 22, 2005

Howard S. Simonoff
Jennings Sigmond, PC
1040 North Kings Highway
Suite 403
Cherry Hill, NJ 08034
*Attorney for Plaintiff*

RECEIVED

JUL 2 5 2005

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

Sean F. Byrnes
Law Offices of Sean F. Byrnes
52 Reckless Place
Red Bank, NJ 07701
*Attorney for Defendant/Counterclaimant*

RE:        New Jersey Regional Council of Carpenters v. A.C.E. Construction, Inc.
           Civil Action No. 05-CV-971 (GEB)

Dear Counsel:

This matter comes before the Court upon the summary judgment motion of plaintiff New

Jersey Regional Council of Carpenters ("Carpenters') seeking to enforce the labor arbitration

award of Steven M. Wolf, Esq. and his supplemental labor arbitration award in the amount of

$60,854.28 and to dismiss defendant A.C.E. Construction, Inc's ("A.C.E.") counterclaim.

Carpenters also seek pre- and post-judgment interest and the costs incurred in connection with

this action.

I.        BACKGROUND

The Court relies on the undisputed facts as set forth in the Arbitrator's June 7, 2004

Opinion and Award. On or about October 15, 2001, Michael A. Nitti ("Nitti"), President of

A.C.E., executed a Short Form Agreement ("SFA") with the Carpenters. At the time of the

signing, A.C.E. was performing work as a carpentry subcontractor for DiJerolomo Construction

Company, a general contractor working on the five-story Atrium Hamilton Park Nursing Home

in Jersey City, NJ ("the Jersey City job"). DiJerolomo was a Union signatory employer bound by

the May 1, 2000 to April 30, 2002 Agreement ("2000-2002 Agreement").

The SFA provided, in pertinent part:

> WITNESSETH, the undersigned agree to be bound by every
> current collective bargaining agreement between the Local Unions,
> Regional Councils, State Council and The Building Contractors
> Association of New Jersey, governing wages, working conditions
> and payments to fringe benefit funds which agreement is
> incorporated herein by reference . . . This Agreement shall continue
> in effect for the duration of the above referred to agreement and
> shall be deemed renewed on the same basis as the above referred
> Agreement is renewed by renegotiations or otherwise, including
> any amendments and/or modifications thereto, and shall continue
> in full force and effect from year to year unless at least 90 days
> before termination of the then current collective bargaining
> agreement, either party notifies the other in writing of cancellation
> of this Agreement . . .

At the time A.C.E. signed the SFA, the 2000-2002 Agreement was still in effect. However, the

Carpenters and BCA subsequently negotiated and executed a new master agreement effective

May 1, 2002 through April 20, 2007 ("2002-2007 Agreement").

After completing its work in Jersey City, on July 26, 2002, A.C.E. sent a letter to the

Carpenters State Council stating that it had "decided to not renew [its] contract with the New

Jersey State Council of Carpenters." On August 2, 2002, Robert Fagella, attorney for the

Carpenters, responded in writing that A.C.E.'s attempt to cancel the contract was void and

2

ineffective because, "pursuant to the terms of the [SFA] which you signed, notice of cancellation had to be provided at least 90 days before the expiration of the then current collective bargaining agreement. That required written notice of cancellation by January 2002."

Subsequently, A.C.E. procured a $400,000 prevailing rate job from the Ocean County Park Commission ("Park Commission"), at the Ocean County Sports Complex in Tuckerton, New Jersey. In addition to its own regular three-man crew, A.C.E. hired fifteen (15) additional workers. The additional workers were not referred by the Carpenters as required by the 2002-2007 Agreement. As a result, the Carpenters initiated a grievance which was submitted to the American Arbitration Association in accordance with the terms of 2002-2007 Agreement.

Steven M. Wolf ("the Arbitrator") was designated as the arbitrator to hear and resolve the dispute. A hearing was conducted on November 12, 2003 and February 13, 2004. The Arbitrator issued an Opinion and Award on June 7, 2004, finding that the SFA was enforceable because A.C.E. failed to give timely notice of its intent to terminate. Thus, the Arbitrator held that A.C.E. had breached the 2002-2007 Agreement's referral procedures when it hired the additional workers for the Park Commission job. Following an audit, the Arbitrator issued his Supplemental Arbitration Award, awarding the Carpenters $60,854.28. This award consisted of $42,555.44 in wages and $18,298.84 in total fringe benefits, representing the work A.C.E. wrongfully withheld from Union-referred Carpenters.

On or about February 18, 2005, Carpenters initiated this action to enforce the Arbitrator's Award and Supplemental Award. On March 16, 2005, A.C.E. filed its Answer and asserted a four (4) Count Counterclaim. A.C.E. contends that the Arbitrator's Award should be vacated and the SFA should be declared null and void because, *inter alia*: (1) A.C.E. signed the SFA under

3

duress because the Union threatened to picket the Jersey City job if they did not, (2) A.C.E. was not provided with a copy of the 2000-2002 Agreement or advised that the 2002-2007 Agreement would soon be executed; (3) the SFA did not inform A.C.E. that it would apply to work beyond the Jersey City job and/or that A.C.E. would be bound by the soon to be executed 2002-2007 Agreement; and (4) the SFA is an adhesion contract. These same arguments were rejected by the Arbitrator in his June 7, 2004 Award.

II.   ANALYSIS

   A.   The Arbitrator's Award And Supplemental Award Must Be Enforced Because They Draw Their Essence From The Relevant Agreements

"It is well settled that courts have limited power to review a labor arbitrator's award." United Parcel Service, Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 430, 55 F.3d 138, 141 (3d Cir.1995). This Court must enforce the Arbitrator's award if it "draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "An arbitration award draws its essence from the bargaining agreement if 'the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties intention.'" Tanoma Mining Co., Inc. v. Local Union No. 1269, UMWA, 896 F.2d 745, 748 (3d Cir. 1990).

   The Third Circuit has stated that a court may vacate an arbitrator's award only "if there is no support in the record for its determination or if it reflects a 'manifest disregard of the [collective bargaining] agreement, totally unsupported by principles of contract construction . . .'" Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) (quoting News

4

Am. Publications, Inc. v. Exxon Seamen's Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990).  A court may not disturb an arbitration award even if it disagrees with the arbitrator's legal conclusions or interpretation of the collective bargaining agreement.  See Citgo Asphalt Refining Co. v. Paper, Allied-Industrial Chemical & Energy Workers International Union Local No. 2-991, 385 F.3d 809, 816 (3d Cir. 2004) (holding that a court may not disturb an arbitration award "even if [it] find[s] the basis for it to be ambiguous or disagrees with [the arbitrator's] conclusions under the law."); see also United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 38 (1987) ("A court should not reject an award on the ground that the arbitrator misread the contract.").  "Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further." Brentwood Medical Associates v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005).

Further, the "same narrow scope of review applicable to the arbitrator's finding of a violation of the [collective bargaining agreement] is applicable to the arbitrator's choice of remedy for the violation." Teamsters Union Local 115 v. DeSoto, Inc., 725 F.2d 931, 937 (3d Cir. 1984).  The Supreme Court has stated that "[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution to the problem.  This is especially true when it comes to formulating remedies." United Steelworkers, 363 U.S. at 597.  "[W]here it is contemplated the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." Misco, 484 U.S. at 38.  "[T]he question is not whether the remedy is the best remedy, but rather, whether the remedy is rational and justified." DeSoto, 725

5

F.2d at 939.

This Court finds that the Arbitrator's Award and Supplemental Award draw their essence from the collective bargaining agreement. Specifically, the Arbitrator rejected A.C.E.'s contention that the SFA was ambiguous, stating that the SFA by its very terms put A.C.E. "on notice that any successor agreement to the 2000-2002 Agreement would continue to bind [A.C.E.] unless it notified the Carpenters Council at least ninety days prior to the April 30, 2002 expiration of the 2000-02 Agreement, or by about January 30, 2002." Arbitrator's Award at 7. This Court finds that the Arbitrator's decision represents a rational interpretation of the SFA and collective bargaining agreements.

The arbitrator also explicitly rejected the very same arguments that A.C.E. now asserts in its counterclaim, emphasizing that "[t]he plain fact is that if timely notice of termination had been given by the Company, all other issues would be irrelevant." Arbitrator's Award at 9. As a threshold matter, the Arbitrator rejected A.C.E.'s arguments that the SFA should be deemed unenforceable because it was executed under duress and constituted an adhesion contract. The Arbitrator noted twice that SFA's are routinely used in the construction industry. Thus, he concluded "there is nothing constituting the Short Form Agreement that would render it *per se* inappropriate . . ." Arbitrator's Award at 5.

Considering A.C.E.'s argument that a decision in Carpenters favor would, in effect, transform a Section 8(f) agreement into a Section 9(a) agreement, the Arbitrator reasoned that recent case law, including John Deklewa & Sons, 282 N.L.R.B. 1375 (1987), a case relied on by A.C.E. again here, has established: "(1) that an employer indeed has the right to terminate a Section 8(f) agreement; and (2) that, if it fails to do so upon timely notice, given that such notice

is mandated, then the automatic renewal, or "evergreen" clause of the Section 8(f) agreement becomes effective so as to continue the parties' relationship." Arbitrator's Award at 8-9.

With respect to A.C.E.'s argument that a critical distinction in this case is that it was not a member of the multi-employer association, the Arbitrator stated that this distinction is "of assistance to [A.C.E.] only if it has given timely notice of its intent to withdraw from its Section 8(f) relationship with the Carpenters Council." Arbitrator's Award at 9.

"In reviewing any arbitration award, courts 'do not sit to hear claims of factual or legal error by an arbitration as an appellate court does in reviewing decisions of lower courts." Major League Umpires Assocation v. American League of Professional Baseball Clubs, 357 F.3d 372, 380 (3d Cir. 2004). This Court is satisfied that the arbitrator's award draws its essence from the pertinent agreements. Concomitantly, the Court is satisfied that the Arbitrator's Supplemental Award draws its essence from the agreements and is rational and justified. See DeSoto, 725 F.2d at 939 ("The question is not whether the remedy is the best remedy, but rather, whether the remedy is rational and justified."). Accordingly, the Carpenters motion to enforce the Arbitrator's Award and Supplemental Award is granted and A.C.E.'s counterclaims are dismissed.

      B.    Carpenters Also Seek Pre- And Post-Judgment Interest And Costs

Carpenters asserts that it is entitled to pre-judgment interest and costs in connection with this action to enforce the Arbitrator's award. "District courts have broad discretion in determining whether to allow prejudgment interest in claims arising under federal labor law." Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Owens-Illinois, Inc., 758 F. Supp. 962, 975 (D.N.J. 1991). "The general rule is that pre-judgment interest is awardable when

the damages from the breach of contract are ascertainable with mathematical precision." Id. at

975. The Third Circuit has outlined the factors to be considered when determining whether an

award of pre-judgment interest is appropriate.  The factors are:

    (1)    whether the claimant has been less than diligent prosecuting
            the action;
    (2)    whether the defendant has been unjustly enriched;
    (3)    whether an award would be compensatory; and
    (4)    whether countervailing equitable considerations militate
            against a surcharge.

Feather v. United Mine Workers of America, 711 F.2d 530, 540 (3d Cir. 1983).  Considering the

above factors and noting that A.C.E. did not address these issues in its opposition brief, the Court

will award pre- and post-judgment interest and costs, excluding attorneys fees.  Carpenters is

directed to submit to this Court an appropriate bill of costs comporting with Local Civil Rule

54.1 within ten (10) days of the entry of this Order.

       An appropriate Order accompanies this Letter Opinion.

GARRETT E. BROWN, JR., U.S.D.J

8